# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7583 | **DATE** | 5/30/2001 |
| **CASE TITLE** | Bull vs. Coyner | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court grants Trevor Bull's application for attorney's fees and costs (59-1, 59-2, 84-1). Plaintiff is awarded $88,345 in attorneys fees and $4,684.10 in costs pursuant to 42 U.S.C. 1988.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | JUN 4 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 93 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | FILED FOR DOCKETING 01 JUN -1 PM 3: 21 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TREVOR L. BULL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 98 C 7583 |
| ) | |
| SANDRA COYNER, RENEE HAGEMAN, ) | |
| and CITY OF WHEATON, ) | |
| ) | |
| Defendants. ) | JUN 4 2001 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The City of Wheaton fired Trevor Bull in 1998. Bull sued the City and two of his supervisors, Sandra Coyner and Renee Hageman, alleging that they fired him in retaliation for exercising his right to free speech, and that the City failed to accommodate his disability (retinitis pigmentosa, which rendered Bull virtually blind) and retaliated against him for filing a charge of disability discrimination, in violation of the Americans with Disabilities Act. In February 2000, Judge David Coar granted summary judgment in favor of the City on the ADA claims. *Bull v. Coyner*, No. 98 C 7583, 2000 WL 224807 (N.D. Ill. Feb. 23, 2000). Bull's free speech claim proceeded to trial before this Court in January 2001. The Court entered judgment as a matter of law in favor of the City of Wheaton. The jury returned a verdict in Bull's favor against Coyner and Hageman, awarding Bull compensatory damages of $67,420, and punitive damages of $240,000 against Coyner and $160,000 against Hageman. Bull accepted the Court's remittitur of the punitive damage award to $67,420 against each defendant, reducing his total damages to



$202,260.

Bull seeks compensation for $166,621.25 in fees for lead attorney John DeRose, $14,612.50 in fees for attorney Anthony Capua, and $4,684.10 in out-of-pocket costs. Defendants make no objection to the requested costs or to all but a small part of the amount requested for Capua. Their objections focus on three issues: the appropriate hourly rate(s) for DeRose's time; whether DeRose and Capua should be compensated for tasks that defendants characterize as clerical; and whether the fees should be reduced to account for the claims on which Bull did not succeed. We address these points in turn.

### Discussion

Under 42 U.S.C. §1988, a prevailing party in a case of this type is entitled to recover his reasonable attorney's fees. The starting point in determining reasonable fees is to determine the number of hours reasonably expended by counsel and then multiply that by a reasonable hourly rate. *E.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

An attorney's reasonable hourly rate is determined based on the market rate for the attorney's services. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question. *See, e.g., Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). However, "'[t]he attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate.'" *Id.* (quoting *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir. 1996).

DeRose reports that when clients pay him by the hour, his standard rate is $300 per hour for in-court time and $175 per hour for out-of-court time. DeRose Decl. ¶15. In this case,

however, he seeks higher amounts: $425 for in-court time and $300 for out-of-court time. DeRose justifies the higher request with three arguments: first, his hourly-rate fees are not truly comparable, because they are for cases nothing like this one; second, a higher rate is appropriate because of the "inherent risk" involved in taking on contingent-fee cases like this one; and third, the higher rates he seeks are reasonable because they are within the range charged in the market in the Chicago area for cases of this type by attorneys with his level of experience.

There is no question that DeRose is a skilled attorney with significant experience in the civil rights field. But his arguments do not justify enhancement of his regular hourly rate. First, DeRose says his hourly-rate clients have problems that are much simpler to handle than a civil rights case. This assertion is not supported by the materials submitted to the Court. As a general rule, civil rights cases are no more complex than ordinary civil litigation; this case certainly was not. DeRose is correct that civil rights cases often involve lengthy discovery and extensive motion practice, but that extra commitment of time is accounted for in extra hours for which the attorney is compensated; DeRose supplies no justification for increasing his hourly rate to account for the additional time the case may have required. Moreover, the Seventh Circuit has made it clear that "[a] premium rate for civil rights cases, applicable only when the other side is paying, looks like nothing so much as a disguised multiplier," which the Supreme Court has forbidden. *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992), citing *City of Burlington v. Dague*, 505 U.S. 557 (1992). Similarly, giving DeRose an enhancement over his regular hourly rate based on the "inherent risk" in contingent-fee litigation likewise would amount to an improper risk multiplier. *See, e.g., Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).

3

Finally, the Court cannot justify an enhancement over DeRose's regular hourly rate on the grounds that other lawyers in the field charge a higher rate. As the Seventh Circuit stated in *Gusman*, "[a] client who retains a lawyer with an hourly rate of $100, when the average in the community is $150, is entitled to collect from his adversary only $100 for each hour reasonably expended." *Id.* at 1149-50. In short, DeRose cannot justify a larger hourly rate for himself by virtue of the fact that other lawyers charge more than he does.

In sum, based on what has been submitted to the Court, in this case DeRose's "presumptive" market rate is in fact the appropriate rate for his services. If he had obtained fee awards in other similar cases at rates higher than his standard $300 / $175 rates, the Court might nonetheless consider an upward adjustment to those rates. But DeRose's declaration submitted in support of his fee request identifies no case in which a court in this District or elsewhere awarded him more than what he charges his hourly-rate clients. For these reasons, and because this is not a case in which the Court is *unable* to determine counsel's true billing rate, *see People Who Care*, 90 F.3d at 1310, the Court concludes that the reasonable rate for DeRose's services is $300 per hour for in-court time and $175 per hour for out-of-court time.

There is one exception to this: the time DeRose spent on clerical tasks, such as copying and faxing documents. Defendants argue that compensation should be denied altogether for the time DeRose spent on such tasks. DeRose responds that his two-person law office does not have any clerical staff, so if he does not perform these tasks, they do not get done. That does not justify billing DeRose's clerical time at his full hourly rates; $175 per hour is not the *reasonable* value for time spent photocopying documents. But the Court does not agree with defendants that Bull should receive no compensation for this time. The time had to be put in, if not by DeRose

4

then by someone else. If the work had been done by someone else, DeRose would have been compensated for it in one way or another: if a paralegal, directly by reimbursement at the rate charged to clients for paralegal time, and if a secretary, indirectly via DeRose's overhead, which would be reflected in his hourly rates. The fact that DeRose does not have an office staff means that he has a lower overhead, and thus presumably a lower hourly rate, than lawyers who employ secretaries and/or paralegals. To deny compensation outright for the clerical work thus would give defendants a windfall to which they are not entitled. The Court finds that the reasonable value of DeRose's and Capua's clerical time is $10 per hour and will calculate at that rate all 54 of DeRose's hours that defendants identify as "purely clerical," 3.25 of DeRose's hours that defendants identify as "partly clerical,"[1] and Capua's 3.75 hours spent filing briefs. DeRose's remaining time will be calculated at the $300 / $175 rates, and Capua's remaining time will be calculated at the rate of $175 per hour (a rate to which defendants have not objected).

Defendants also object to 3.25 hours claimed by DeRose on January 12, 2001 for awaiting the jury's verdict. Though the Court recognizes that DeRose has been denied compensation for such time in other cases, we do not agree that the time should be eliminated in this case. DeRose's office is located in Hinsdale, Illinois – at least 45 minutes from the courthouse in light traffic, and much more on a Friday afternoon, which is when the jury began its deliberations. When the jury recessed to deliberate, the Court directed counsel to be available if the jury had questions. And it was reasonable to believe that the jury would return a verdict

---

[1] This represents the sum of 0.75 hours on 4/30/99, 0.75 hours on 10/11/99, 0.5 hours on 12/20/99, 0.25 hours on 9/16/00, 0.50 hours on 1/6/01, 0.25 hours on 2/26/01, and 0.25 hours on 3/19/01. The remainder of the time is not truly clerical, as it was spent culling significant items for use in depositions and the final pretrial order, in preparing submission to the Court, or other non-clerical purposes.

5

that afternoon. Under the circumstances, DeRose made a sensible decision to stay at the courthouse rather than returning to his office only to have to come back to court later – travel time (in both directions) for which he would have been entitled to compensation. The Court concludes that these hours should not be deducted, though it will award compensation at DeRose's out-of-court rate of $175 rather than his in-court rate of $300.

The following table sets forth the "lodestar" amount that results from the Court's rulings:[2]

| Attorney / type of work | Number of hours | Hourly rate | Lodestar amount |
|---|---|---|---|
| DeRose: in-court | 38.50 | $300.00 | $11,550.00 |
| DeRose: out-of-court | 465.55 | $175.00 | $81,471.25 |
| DeRose: clerical | 57.25 | $10.00 | $572.50 |
| Capua: attorney time | 96.00 | $175.00 | $16,800.00 |
| Capua: clerical | 3.75 | $10.00 | $37.50 |
| **Total** | | | $110,431.25 |

Defendants request that the Court reduce the "lodestar" amount by 40% because Bull lost on his ADA claims, his state law claim for intentional infliction of emotional distress, and his free speech claim against the City of Wheaton, and because Bull recovered less than he was looking for on his free speech claim against Coyner and Hageman. "The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. §1988." *Hensley*, 461 U.S. at 439. The Court agrees that some reduction is

---

[2] In calculating the attorney time listed in the table, we have used the revised time records that accompany plaintiff's reply memorandum, making the adjustments discussed in this opinion.

appropriate, but the amount defendants request is too great.

The Court credits DeRose's statement that his briefing of the ADA claim on summary judgment "required no new or original research." Plaintiff's Reply at 7. We also agree with Bull that the witnesses on his ADA and emotional distress claims were largely the same as the witnesses on his free speech claim, and thus that the same witnesses would have been deposed and would have testified at trial even if he had not brought ADA claims. For this reason, Bull's ADA claims were not "distinct in all respects" from his free speech claims; his ADA retaliation claim and his free speech claim involved, to some extent, a "common core of facts," *Hensley*, 461 U.S. at 435; *Bryant v. City of Chicago*, 200 F.3d 1092, 1099 (7th Cir. 2000), in that they both concerned defendants' motivations for terminating Bull. *See Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983) (court should determine whether claims seek relief for same course of conduct). But the same cannot be said for Bull's ADA accommodation claim or his state law emotional distress claim, and the ADA retaliation claim undeniably involved a legal theory entirely distinct from his other claims as well as some factual issues that were in no way implicated in the free speech claim – such as the timing of defendants' knowledge that Bull had filed an EEOC charge. Under the circumstances, some reduction in recoverable attorney's fees to account for Bull's partial success is appropriate.

The Court does not agree with defendants, however, that the amount of Bull's attorney's fees should be reduced on account of the fact that he did not prevail on his free speech claim against the City of Wheaton or by reason of the amount of damages awarded. Though it is true that a claim of municipal liability under §1983 entails elements of proof that are not involved when a plaintiff sues only the responsible individuals, in this case defendants have not identified

*any* of DeRose's or Capua's time that was devoted to pursuing the municipal liability claim as opposed to his other claims. Under the circumstances, no reduction is appropriate.

Finally, no reduction is appropriate by reason of the fact that a jury awarded Bull far less than the $5,000,000 requested in his complaint. Though the Court is required to adjust the lodestar to reflect "the significance of the overall relief obtained," *Hensley,* 461 U.S. at 435, defendants cite no authority for the proposition that the amount of the *ad damnum* is material in determining the degree of plaintiff's success. The *ad damnum* clause is of limited significance in federal civil procedure. Its sole legal function is to cap the amount of a judgment rendered by default; aside from that, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed. R. Civ. P. 54(c). A large *ad damnum* clause is believed by some plaintiff's lawyers to have an *in terrorem* effect on defendants, but no defense lawyer worth her salt is cowed by an extra zero or two in the complaint. Indeed, a savvy defense lawyer may be able to take advantage of an inflated *ad damnum,* using it in as a means to ridicule the plaintiff in cross-examination. But that does not mean that a plaintiff who recovers less than the amount stated in his complaint should have his attorney's fees cut. In this case, Bull obtained by way of the jury's verdict damages that were every bit as high (or virtually so) as they would have been had he also prevailed on his ADA claims: all the lost wages he sought, and significant punitive damages. Under the circumstances, no reduction based on the jury's damage award is warranted.

Taking account of all the appropriate factors under *Hensley,* and in light of the above discussion, the Court concludes that a reduction of Bull's attorney's fees by 20% appropriately reflects the extent of his success in this case. The result is a fee award of $88,345 (80% of

8

$110,431.25).

## Conclusion

For the foregoing reasons, the Court grants plaintiff Trevor Bull's application for attorney's fees and costs [Docket Items 59-1, 59-2, 84-1]. Plaintiff is awarded $88,345 in attorney's fees and $4,684.10 in costs pursuant to 42 U.S.C. §1988.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 30, 2001